### SAUNDERS v. McDONOUGH et al.
(6 Div. 609.)

(Supreme Court of Alabama. June 30, 1923. Rehearing Denied Oct. 18, 1923.)

1. **Joint adventures** ☞4(4)—**Costs and expenses of promotion are first charge upon proceeds.**

Unless the contract provided otherwise, costs and expenses of promoting a joint adventure from its inception to its conclusion, when legitimate and proper and made in good faith, even though not absolutely necessary or not effective and profitable, are a first charge upon the proceeds before profits can be distributed.

2. **Joint adventures** ☞4(4)—**Costs of promotion attach from inception, not from date any particular adventurer came in.**

The costs and expenditures of promoting a joint adventure, deductible from the proceeds, attach from its inception, and not from the date when any particular adventurer came in.

3. **Joint adventures** ☞2—**Adventure terminated when purpose accomplished.**

Where, in a joint adventure for the purpose of exploiting certain ore lands, by a resale or operation, after efforts for raising money for operation proved unsuccessful, the entire holdings of the adventurers were sold at a profit, the adventure was not terminated until the day of sale, when the essential and only practicable purpose of the adventure was accomplished.

4. **Tender** ☞18—**Tender must be kept good to prevent interest on debt from running.**

To stop interest on share of expenses of joint adventure from running, the debtor must not only tender the amount of the debt to his creditor, but thereafter keep the tender good by having the money at all times ready for payment if it should be demanded.

5. **Joint adventures** ☞5(2)—**Evidence held to sustain finding note not executed to pay promotion expenses.**

Finding of register that complainant executed a note to his partners in a joint adventure, not to pay his share of the promotion expenses, but to compensate one partner for individual loss, *held* sustained by the evidence.

6. **Appeal and error** ☞1099(1)—**Purpose for which note given not decided on prior appeal.**

Whether a note was given by a party to a joint adventure to pay for promotion expenses *held* not decided on prior appeal, but left an open question.

7. **Joint adventures** ☞4(2)—**Party not liable for loss due to compulsory sale of securities, when greater amount sold than needed.**

Where a party to a joint adventure sold $22,500 securities for $16,500, in order to meet $7,470 interest obligations of the company, his loss of $6,000 cannot be visited upon the company.

8. **Joint adventures** ☞4(4)—**Advances already refunded improperly allowed in accounting.**

Credit for advances made by a party to a joint adventure when the money appears to have been refunded was improperly allowed in the accounting.

9. **Joint adventures** ☞4(4)—**Sums expended in buying stock held not excessive.**

Allowance on accounting of sums expended in buying stock, held by persons other than the coadventurers, in order to effect a sale of the entire holding, *held* not improper or excessive.

10. **Mines and minerals** ☞101—**Value of ore lands is market value.**

In determining the value of ore lands, upon an accounting between joint adventurers, the proper value of the land is what it will bring

━━━━━

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

in the market, and not the potential value of the ore which could be reclaimed therefrom.

**11. Joint adventures ⬤⟳5(1)—Decree awarding one-fifth of value of stock includes value of proceeds after sale thereof.**

A decree awarding to complainant one-fifth of the highest value of the stock, in a company promoted as a joint adventure, was comprehensive enough to include by just and equitable extension the value of the proceeds of the stock which ceased to exist when the holdings were sold.

**12. Joint adventures ⬤⟳4(1)—Sale by majority not impeachable except for bad faith.**

A sale of land by a majority of joint adventurers cannot be impeached except for bad faith or its equivalent.

**13. Joint adventures ⬤⟳4(1)—Accounting of proceeds of sale of stock ordered.**

Where stock holdings of a joint adventure, of which one-fifth equitably belonged to complainant, were sold, and Steel certificates received in part payment, complainant is entitled to an accounting of the amounts received from sale or exchange of the Steel certificates, or, if still held, of their present value.

Appeal from Circuit Court, Jefferson County; Hugh A. Locke, Judge.

Bill by Warwick Saunders against R. N. McDonough and others, to compel an accounting. From a decree, complainant appeals. Reversed and remanded.

Tillman, Bradley & Baldwin and John S. Stone, all of Birmingham, for appellant.

When a trustee uses funds or property of a cestui que trust in acquiring property, the cestui has a right, at his option to take the property so acquired, or require the trustee to pay him the money or value of the property converted, with interest. Foley v. Leva, 101 Ala. 395, 13 South. 747; Lehman v. Lewis, 62 Ala. 131; Bass v. Bass, 88 Ala. 413, 7 South. 243. A partner in dealing with the property of another partner is in all respects subject to the principle above stated. Bestor v. Barker, 106 Ala. 250, 17 South. 389. The report of a master, which fails to show how he arrived at his conclusions stated therein, is not a proper report, and should not be considered by the court. Teal v. Farrow Merc. Co., 204 Ala. 355, 85 South. 705; O'Neill v. Perryman, 102 Ala. 522, 14 South. 898.

Alex M. Garber, of Birmingham, and Forney Johnston, of Washington, D. C., for appellees.

Where the amount of the contribution of the several parties to a joint adventure is not agreed on, they are bound to bear equally all losses, expenses, etc. Saunders v. McDonough, 191 Ala. 119, 67 South. 595; Briggs v. Boynton, 212 Mass. 5, 98 N. E. 794; Maas v. Lonstorf, 194 Fed. 577, 114 C. C. A. 419; In re McConnell (D. C.) 197 Fed. 438; Runkle v. Burrage, 202 Mass. 89, 88 N. E. 573; Funk v. Miller (Tex. Civ. App.) 142 S. W. 24; Boqua v. Marshall, 88 Ark. 373, 114 S. W. 714.

SOMERVILLE, J. The bill of complaint in this cause was filed on May 1, 1913, to compel an accounting by the respondents, R. N. McDonough, J. H. McDonough, W. A. Porter, and J. J. Shannon, of the proceeds of a joint adventure for the purchase and sale of iron ore lands, undertaken by complainant and said respondents.

The substance of the bill is fully stated in the report of the first appeal (Saunders v. McDonough, 191 Ala. 119, 67 South. 591, wherein the principles of law applicable to such a case were settled by rulings on demurrers to the bill.

When the cause was tried on its merits, on pleadings and proof, the decree was that the complainant Saunders was in fact a coadventurer with the four respondents named, in the acquisition of the ore lands from Aldrich and Towers by the transaction of January 3, 1913, and that he was entitled to share equally with them in the proceeds thereof; the proceeds being nominally 9,970 shares of stock in the corporation, formed by them for the purpose of taking over the ore lands, and affecting their profitable exploitation, either by development operations, or by resale to others.

The corporation thus organized was styled the Self Fluxing Ore & Iron Company, and its capitalization was $300,000 of first mortgage bonds to be delivered to Aldrich and Towers as payment of the purchase price for the lands, and $1,500,000 of common stock, of which $3,000 was issued to the nominal organizers, $50,000 to Aldrich and Towers, under a collateral agreement for raising funds, and $997,000 to the four coadventurers —the two McDonoughs, Porter and Shannon. The remainder—$450,000—was held as treasury stock, of which $143,400 was afterwards sold and issued to various persons.

On appeal to this court from the final decree above referred to, the decree was that—

"Complainant is entitled to recover jointly and severally from the said respondents [naming them] one-fifth of the highest value of said stock received by said respondents, from the date when issued, with interest thereon from said date, and to an accounting with them of said joint adventure." McDonough v. Saunders, 201 Ala. 321, 78 South. 160.

The opinion on that appeal discusses the testimony and other evidence on the main equities of the case quite fully.

The order of reference, made by the trial court, directed the register—

"To state said accounts, and to ascertain and report the amount that complainant is entitled to recover of each of said respondents for his

⬤⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

interest in the said stock received by each of them [modified on appeal so as to make respondents' liability joint and several]. In stating the accounts, the register will give each of said joint adventures credit for expenditures properly made by him in the prosecution of the joint adventure, with interest."

Pursuant to this order, the register held the reference, heard testimony, stated the accounts, and ascertained and reported a balance due to the complainant, Saunders, of $3,475.57, which included interest to the date of the report—August 21, 1920.

As appears from the reports of the former appeals, this joint adventure had its inception some time prior to August 5, 1912, at which time complainant first became associated with the original adventurers, these respondents. When their option to purchase the lands expired without result on January 2, 1913, respondents made a new agreement with the owners, which was executed on January 3, 1913, by their conveyance, at a slightly higher price, to the holding corporation already referred to.

Conceiving that the complainant, Saunders, had forfeited his rights in the enterprise, the respondent adventurers ignored him in the last-named transaction, denied his status as a coadventurer with themselves, and thereafter proceeded with their designs, as though he were not an associate.

An effort was made to raise funds for operations by the holding corporation, but without success; and efforts were then directed to a sale of the property to some other company on the best terms procurable.

This plan was finally realized by a contract made with one Coverdale and associates, by which the respondent adventurers undertook to transfer and deliver to the Coverdale interests the entire outstanding capital stock of the holding corporation, and several small tracts of ore lands of their own, and not in the joint adventure, upon the consideration of $200,000 in cash, and the transfer and delivery to them (the McDonoughs, Porter, and Shannon) of $450,000, par value, in unissued trust certificates for common stock of the Gulf States Steel Company, then in process of organization as successor to the bankrupt Southern Iron & Steel Company.

This contract was executed by the parties, and the respondent adventurers received the consideration stated, less certain deductions for expenses; that is to say, each of them received $13,000 in cash, and $96,800 par value of said certificates.

The foregoing is but a brief abstract of the transactions upon which the accounting here involved is grounded, and by which its range is bounded.

[1] The costs and expenses of promoting the joint adventure, from its inception to its final conclusion, are always a first charge up-on the proceeds of the adventure, and must be allowed before any distribution of the profits can be made. This assumes, of course, that the contract of adventure does not provide otherwise, and that such costs and expenses are legitimate and proper in the premises, though it need not appear that they were absolutely necessary, nor that they were in fact effective and profitable. Campbell v. North-West Eckington Co., 229 U. S. 561, 584, 33 Sup. Ct. 796, 57 L. Ed. 1330. They must, however, appear to have been reasonably appropriate for and adapted to the successful promotion of the adventure, and they must have been made in good faith. If approved and allowed by a majority of the adventures—since a majority must be accorded the right and the power to determine and control the details of the promotion, consistently with the general agreement and design—it seems clear that nothing short of gross impropriety or actual bad faith would condemn them and forbid their allowance.

[2] These promotion costs and expenditures unquestionably attach to the adventure from its inception, and not from the date when the last adventurer, or any particular adventurer, came in.

[3] In the allowance of such items in this case, it was a matter of first importance to determine when the period of promotion was ended, and the joint adventure closed, by the achievement of its primary and essential purpose. That purpose, as understood and stated by this court on last appeal, was to continue "until the land was acquired by a purchase thereof and resold, or operated by them jointly;" the plan being "to purchase and resell the lands for a profit, or to operate them after being acquired." McDonough v. Saunders, 201 Ala. 321, 323, 78 South. 160.

That the organization of the Self Fluxing Ore & Iron Company, and its holding of these lands, was but a means to an end, and not the end itself, is we think, clearly shown by the testimony in the case, including that of complainant. But apart from all the testimony to that effect, it is manifest, from a consideration of the status and condition of the holding corporation, its entire lack of working capital, its heavy bonded indebtedness, its slender and doubtful equity in the lands which constituted its only assets, and the imminent danger of its complete collapse, that the adventure was but well begun, and that its real promotion and fruition, if fruition were possible, still lay ahead of the adventurers.

We find nothing in the opinions of this court on the former appeals, nor anything in the final decree, which is definitive of the period of the adventure. Certainly, the adjudication to complainant of one-fifth of the shares of the holding corporation issued to his co-adventurers, cannot be so regarded, for that was nothing more than a basis for

the admeasurement of the respective interests of the adventurers, and a tentative adjustment of those interests to the changed form of their assets.

We cannot avoid the conclusion that the joint adventure was not terminated until August 5, 1913, when the holding corporation was sold to the Coverdale interests, and thereby an effective and profitable sale of the lands—the essential and only practicable purpose of the adventure—was accomplished.

It results that the register properly included in his accounting all legitimate items of promotion cost and expenditure that were incurred or made from the inception of the adventure down to the sale of August 5, 1913.

The remainder of our review of the register's report will, therefore, involve two inquiries: (1) As to the propriety of credits allowed to the respondent adventurers as items of promotion cost and expenditure, and of charges against the complainant adventurer in accordance with his obligations; and (2) as to the value that should be placed upon the 9,970 shares of the holding corporation, issued to the respondent adventurers.

The record contains 3,000 pages, and our investigation of the questions presented by the numerous exceptions to the register's report and the 59 assignments of error, has required weeks of patient labor. It is impossible in this opinion to discuss all these matters in detail, and counsel will have to be content, as to most of them, with a summary statement of conclusions.

[4] Complainant excepts to being charged with interest on the amount of his share of promotion expenses from the date or dates when it was due and payable. A debtor who would stop the running of interest on his debt must show, not only that he tendered the amount of the debt to his creditor, but also that he has thereafter kept the tender good by having the money at all times ready for payment if it should have been demanded. McCalley v. Otey, 90 Ala. 302, 8 South. 157; Park v. Wiley, 67 Ala. 310. This exception was properly overruled.

[5] Complainant excepts also to being charged with the amount of his note for $12,-500, with accrued interest, executed by him to the four respondent adventurers, as joint payees, on November 27, 1912.

Complainant's contention is that this note was given to cover his share of promotion expenses, past and prospective, and that, his share of those expenses having been otherwise charged against him, the note should be treated as paid or discharged.

The respondents, however, testified that the note was given to compensate Shannon for his individual loss by reason of paying a higher price to Aldrich and Towers, under the contract of November 26th, than would have been paid under the pre-existing contract with them, the benefit of which Shannon renounced; and that Shannon had the note made payable to all four of them jointly merely by way of sharing with his associates. On this issue of fact we would not be justified in overruling the finding of the register in favor of the respondents, and hence we cannot sustain the exception to this charge.

[6] Counsel for appellant conceive that this issue was decided otherwise on the second appeal in this cause (201 Ala. 321, 328, 78 South. 160, 11 A. L. R. 419), but we cannot agree with this contention. It is true that in the opinion filed on that appeal Mr. Justice Mayfield said:

"If it [the note] was not given for the purpose of taking care of and providing for appellee's [Saunders'] share of the expenses in promoting and consummating the joint adventure, it is difficult to ascertain for what purpose it was given. * * * The written evidence in the record, the note itself, and the documentary evidence attached thereto, together with much oral testimony, render it impossible for us to find that it was not intended to provide in part at least, if not in whole, for appellee's part of the expense in promoting the joint adventure, under the plan of November 26, 1912. * * * We are therefore strongly persuaded that the true consideration of this note was to provide for appellee's part of the expenses in promoting and effectuating the plan of November 26th."

The issue, however, which the court was considering, was the status of Saunders in relation to the joint adventure; and his services in its promotion and the fact of giving this note were treated, arguendo, as probative evidence of his relation and standing.

The true consideration for the note was therefore only collaterally in question and the observations in the opinion indicate an argumentative and tentative conclusion merely, and not a definitive adjudication of the rights of the parties for all the purposes of the litigation. We think, therefore, that on this accounting the obligation of the note was an open question, and was properly considered by the register in the adjustment of mutual obligations between the coadventurers.

Exception is taken to the allowance of a credit to R. N. McDonough of $8,670 for six month's interest on $289,000 of outstanding bonds, which McDonough claims to have paid.

We are entirely satisfied, from the testimony in the record, that the interest on Aldrich's bonds—$119,000 in amount—was not in fact paid by McDonough, but was discharged by the issue to Aldrich of common stock from the treasury. The amount of interest coupons thus discharged, being for 6 months at 6 per cent., must have been $3,570. The credit allowed must therefore be reduced by this amount.

[7] Exception is taken to the allowance of a credit of $6,000, for a loss claimed to have been suffered by McDonough, by rea-

son of his compulsory selling of $22,500 of mortgages securities for $16,500, in order to raise the money necessary to meet the interest on bonds due on July 1, 1913.

This exception is well taken, and should have been sustained. McDonough's testimony shows that only $8,670 was due on all the bonds, of which $1,200 was due on 40 bonds held by himself and associates, leaving $7,470 to be provided for. If he sold his securities to raise $16,500, he must have done so for other requirements than interest payments.

Certainly, his alleged sacrifice cannot be visited upon the necessities of the company, for whose obligations less than half of the sum was needed and used. A claim so unfair and so obscurely grounded cannot with propriety be allowed.

Exception is taken to the allowance of a credit of $5,000 for another similar loss claimed to have been suffered by McDonough, by reason of his compulsory sale to J. T. Robertson of 15 of the company's bonds for $10,500, in order to take care of the company's obligation at a local bank. McDonough bought these bonds at about 80, and the evidence shows that for perhaps several years afterwards that was approximately their actual selling value. We are constrained to regard the loss claimed to have been suffered in this transaction as too remote and speculative to justify its allowance as a charge against the adventure. This exception must therefore be sustained.

[8] The two items of $400 and $425, allowed for advances made by McDonough for pay rolls in the course of development work in July and August, 1913, appear to have been refunded, according to the testimony of R. N. McDonough, and hence were improperly included in the account. The exceptions as to these allowances must also be sustained.

[9] The contract of purchase and sale with the Coverdale interests required the surrender to the purchaser of all the outstanding stock of the Self Fluxing Ore & Iron Company. The testimony of R. N. McDonough showed that in buying in the stock held by persons other than the coadventurers, $143,400 in amount, it was necessary to pay out an aggregate sum of $91,827, and to transfer $62,800 of the Gulf States Steel certificates, in order to secure the surrender of their stock certificates.

The register allowed the amount of these items thus expended as a proper charge against the joint adventure, and, in view of the requirement of the contract of sale, and the exigencies of the situation, we are unable to say that the allowance was improper or excessive.

As for the other allowances in favor of the respondent adventurers for costs and expenditures in promotion of the adventure, the testimony justifies the register's finding that they were appropriate and reasonable, and we will not disturb his findings.

The only remaining question to be considered is the value of the complainant's one-fifth part of the 9,970 shares of common stock of the Self Fluxing Ore & Iron Company, received by the respondent adventurers after the organization of the company, as representative of their equitable interest in its assets.

[10] Complainant insists upon two alternative theories of value. The first theory is that the value of the stock should be determined by the value of the ore lands held by the company, and that the value of the ore lands should be determined by a consideration of the potential value of the ores which, upon a reasonable estimate of known conditions, could be reclaimed therefrom. The other theory—predicated on the tentative concession that the joint adventure was terminated only by the sale of August 4, 1913, to the Coverdale interests, and that the respondent adventurers were authorized to make that sale—is that the highest value of the Self Fluxing Ore & Iron stock is the highest value of the proceeds of its conversion, viz., $200,000 in money and 3,872 shares ($100 par) of the Gulf States Steel certificates, which the four respondents adventurers received and divided among themselves; 628 shares of these certificates having been properly disposed of for the common benefit for promotion purposes.

As to the first theory, it is apparent that such a basis for the valuation of mineral lands is entirely too speculative for practical purposes. Undoubtedly, the amount of ore carried by ore lands is the true basis for their valuation, but it is a far cry from ores lying deep in the ground to ores mined and prepared for commercial use; and the ultimate inquiry is as to the value of the land—What it will bring on the market?

To this conclusion the authorities seem unanimous. Stratton's Independence v. Howbert, 231 U. S. 399, 34 Sup. Ct. 136, 58 L. Ed. 285; Babbitt v. Read (D. C.) 215 Fed. 395, Id., 236 Fed. 42, 149 C. C. A. 252; Searle v. Lackawanna R. R. Co., 33 Pa. 57; Reading R. R. Co. v. Balthaser, 119 Pa. 472, 13 Atl. 294; Doud v. Mason City, etc., Co., 76 Iowa, 439, 41 N. W. 65; Railway Co. v. Davis, 58 W. Va. 626, 52 S. E. 724, 1 L. R. A. (N. S.) 1083, 6 Ann. Cas. 94.

But we need not pursue this phase of the subject further, since the testimony well supports the register's finding that the highest value of the Self Fluxing Ore & Iron shares did not exceed the amounts for which they were actually sold to the Coverdale interests on August 4, 1913.

[11] Here, however, a practical difficulty arises. If literally and technically construed, the decree awarding to complainant a

one-fifth interest in the 9,970 shares of stock, and allowing recovery against the respondent adventurers, jointly and severally, for the value of one-fifth of the stock received by them respectively, would limit the inquiry as to the value of the stock to the period between the date of its issuance and August 4, 1913, since it ceased to exist, as joint adventure assets, on the latter date, and thereafter had no value.

[12] The sale of August 4, 1913, was in effect a sale of the land; the holding corporation being but an agency by which that object was conveniently accomplished. It was a compulsory sequel to an unsuccessful attempt to exploit the lands by corporate operations. Under the express terms of the joint adventure agreement, these respondent adventurers had "the right to control the price on this land at all times." The right of the majority to determine upon a sale, and to fix the price, was in fact exercised by them under the forms of corporate action, and cannot be impeached except for bad faith or its equivalent, as to which there is evidence.

Technically, therefore, as already stated, the inquiry as to value directed by the decree would not extend beyond the time when the Self Fluxing Ore & Iron stock, itself representative merely of an equity in the lands, was converted into money and securities, representing for the first time the final proceeds of the joint adventure. The testimony shows that the Gulf States Steel certificates were at that time, and for a year or two afterwards, worth not more than $3 per share; and the register in his report, as did the court in its decree thereon, gave them that value in his appraisal of the value of the Self Fluxing Ore & Iron stock. Of course we are speaking of gross value, and not distributable value, which latter was properly arrived at by deducting items of charge, and of cost and expenditure.

[13] Our opinion, however, is that the decree awarding to complainant the highest value of the stock is comprehensive enough to include, by just and equitable extension, the value of the proceeds of its conversion by these respondents. They were, as to the Gulf States Steel certificates, trustees for complainant; and, while it would not be equitable to hold them accountable for the speculative value of those certificates, as afterwards reflected in the market value of the shares issued thereon, we think it would be still more inequitable to allow them to retain the proceeds of the certificates in excess of $3 per share, if they have disposed of them, or any part of them, thus advantageously. If one-fifth of them equitably belonged to complainant—and the decree so declares—it is impossible to find a sound reason for denying to him an equal share in their proceeds actually acquired by these respondents by their improper and unwarranted conversion; or else, if the issued shares, or any part of them, are still held by respondents, an equal share in their present value.

Our conclusion is that a further reference should be ordered for ascertaining and reporting to the trial court the amounts received by respondents in money, or other equivalent, for sales or exchanges of the Gulf States Steel certificates or issued stock; or if any are still held by respondents, or any of them, for ascertaining and reporting their present value; and for restating the account upon the basis of such findings, and of the corrections, noted above, of the errors of the previous accounting.

In other respects the previous accounting is approved, and will not be reopened.

The decree of the circuit court will be reversed, and the cause will be remanded, for further proceedings in accordance with this opinion.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and THOMAS, JJ., concur.