(134 So. 639)
**DAVIS BLUFF LAND & TIMBER CO. et al. v. COOPER.**
**6 Div. 748, 785.**

Supreme Court of Alabama.
April 23, 1931.

Rehearing Denied May 28, 1931.

Benners, Burr, McKamy & Forman, of Birmingham, for appellants.

Stokely, Scrivner, Dominick & Smith, of Birmingham, and Jesse F. Hogan, of Mobile, for appellee.

138

GARDNER, J.

The bill was filed by W. H. Cooper seeking dissolution and distribution of the assets of the corporation Davis Bluff Land & Timber Company (hereinafter referred to as the corporation), and an accounting on the part of defendant Jonas Schwab. So far as concerned the corporation, no objection was interposed and it was dissolved by the decree, and the lands belonging thereto ordered sold.

The real controversy in this litigation relates to the matter of accounting between Cooper and Schwab, as to which the register reported (which was duly confirmed by the chancellor) a large indebtedness due by Schwab to Cooper. Numerous exceptions to this report were filed by Schwab, and some few by Cooper, all of which were overruled. The record is voluminous, and a considera-

tion of each of these exceptions would require a detailed discussion of the evidence (which was submitted on depositions) and extend this opinion to undue length. Suffice it to say that each exception has been duly considered, and it may be understood that as to those not here treated the court is of the opinion they were not well taken.

It clearly appears, both from the averments of the bill and the proof, that the corporation was formed solely for the purpose of making a purchase and resale of what is referred to as the Woods Bluff timber property, and did not function otherwise and was not intended so to do. Schwab had known T. E. Brent, a timber agent, a number of years, and Brent first brought this timber to his notice; it appearing afterwards that Brent and Cooper were interested in the matter of commissions in the sale thereof. Cooper lived in Mobile and Schwab had not met him previously. Omitting details, for all practical purposes the corporation consisted of these three, Schwab owning one-half the shares, Brent and Cooper one-fourth each. The preliminary agreement and part payment on the property occurred in September, 1917, and the corporation was organized the following December.

The bill alleges, and the proof shows, that this transaction resulted in a gross profit of $17,500, but from which—as to net profits— certain expenses allowed by the register's report are to be deducted. Neither Brent nor Cooper, it appears, had funds or credit with which to consummate the purchase, and they looked to Schwab to furnish the cash required. This he did, and we find that Cooper's interest in the corporation was pledged as security for his part of such advancement. As to Brent, his interest was sold to Schwab on December 5, 1918, and needs no further consideration further than to here state our conclusion, that Schwab purchased such interest with his own funds and that the corporation has no cause for complaint concerning the same.

It was largely, if not entirely, through the efforts of Schwab, a sale of this property was effected to Anders Brothers in February, 1918. Subsequently Anders Brothers became financially unable to complete the purchase, and a resale effected with the Patterson-Edy Company, but at a reduced price. But prior to this time, and in September, 1918, Cooper began to importune Schwab to advance the necessary funds for the purchase of the Whiteside timber, representing that a resale at a good profit was already assured. After much correspondence between them, Schwab consented, and advanced to Cooper $3,000. But the purchase was not then consummated, and Cooper used $2,500 in the purchase of another tract for himself, and the balance for his personal use. However Schwab may have

viewed the matter later, we think it clear that a diversion by Cooper of this sum to other purposes was not expected or to be anticipated, but we are persuaded Schwab had reason to understand, if for any reason this particular purchase should not be consummated, that the sum advanced would be returned. As security for this sum Cooper pledged his interest in the corporation.

The original agreement was for a division of the profits one-half each. At the time of this advance and correspondence Schwab was in New York, and only learned of the use of the funds for other purposes upon his return. The Whiteside timber was at last purchased in March, 1919. Schwab met Cooper in Mobile, and insisted upon a different division of profits before he would agree to finance the transaction, stating—according to Cooper's testimony—that he could not get all the money himself, but would have his son-in-law, Ellson, advance $5,000, and the profits to be divided one-third each. It was so agreed and contract to that effect drawn and signed by the parties, their attorneys participating therein. The timber was resold and a good profit realized. The parties again met, reached an agreement as to the expense account of each and a distribution of the remainder pursuant to the former contract of one-third each, and expressly stated that "the parties hereto mutually release each other from all liability under said trust agreement, and all matters growing out of the same." This settlement agreement was likewise prepared by the attorneys of the respective parties.

■ The register in his report avoids the effect of these carefully prepared written contracts upon the theory that Schwab's statement as to procuring Elson a party participant was false and that Schwab needed no financial assistance as he indicated, and therefore took advantage of Cooper's necessitous condition, thereby perpetrating a fraud upon him. There was no special prayer asking for such relief, and it is doubtful that relief of such character could be granted under the averments of facts as not being consistent therewith. Sewell v. Walker, 198 Ala. 152, 73 So. 422. But that question aside and undetermined, it is clear the evidence did not support such conclusion, for it is a well-settled principle that for fraudulent representations to constitute ground for relief they must be relied upon. Darby v. Kroell, 92 Ala. 609, 8 So. 384; Hartford Fire Ins. Co. v. Kirkpatrick, etc., Co., 111 Ala. 456, 20 So. 651.

■■ Cooper admits that he did not believe the representations, saying: "I told him I did not believe a word he said about his son-in-law putting up any money, and I do not believe a word of it yet." We think the use made by Cooper of the money advanced by Schwab while in New York would have jus-

tified his withdrawal of any agreement concerning this purchase. The money had been put to a use wholly different from that for which it had been advanced. He had a right therefore to decline altogether to go further, and therefore had the right to make new terms should he decide to proceed. Cooper's testimony shows that he recognized this, for his statement that he placed no credence at all upon Schwab's statement indicates that he knew Schwab was dictating new terms which, if not accepted, would cause him to retire entirely as he had a right to do, and he recognized Schwab's statement as a mere pretense. The register's report indicates a view that Schwab would have proceeded anyway or was under obligation to do so, but we do not think such conclusion justified by the facts. There was no such fraud therefore as would justify setting aside the solemn written agreements of the parties. Based upon a finding to the contrary, the register credits Cooper with one-half the profits realized instead of the one-third as shown by the contracts of the parties, which amounts to a considerable charge against Schwab.

■ As previously noted, the Whiteside transaction had no connection with the affairs of the corporation, and was entirely an individual matter. But the register's report is sought to be justified upon another theory with which the corporate affairs are concerned, and that is that a portion of the Woods Bluff timber purchase money was used by Schwab in making the first payment on the Whiteside property—a fact not disclosed to Cooper. We recognize the confidential relationship between officers and stockholders of a corporation, and the duty arising therefrom, and that deceit may well be founded on evasion as on direct misrepresentations. Providence Oil & Gas Co. v. Allen, 186 Ala. 282, 65 So. 329; Van Heuvel v. Roberts, 221 Ala. 83, 127 So. 506; Jordan v. Pickett, 78 Ala. 331. But we are not persuaded the facts bring the case within the influence of these authorities. True Schwab deposited money of the corporation to his own account, and mingled it with his own. This was some months before the Whiteside purchase, and it was known to Cooper who made no complaint. From the inception of the corporation all parties recognized that it was under the entire control and management of Schwab, and that it was in effect "a one man corporation." Fletcher on Corporations, vol. 3, p. 205.

At the time of the purchase only two of the original stockholders were left, and so as to the directors, Schwab and Cooper, the former owning three-fourths and the latter the remaining fourth. For all practical purposes the corporation was in reality a partnership between these two. The gross profits, should all payments be met, would not exceed $17,500. There were payments to be made to

the bank. Cooper had pledged his interest in the corporation to Schwab for his indebtedness, and we think the evidence very satisfactorily shows that this indebtedness was in excess of Cooper's interest in the profits of the concern, assuming of course that all money due the corporation would be paid. Had there been a meeting of the corporation and dividend declared as suggested, we can see no practical benefit to Cooper, under these circumstances, for his interest in the profits would have gone to Schwab under his pledge. Cooper looked to Schwab for the entire financial management and knew he was depositing the money and commingling it with his own. Under these circumstances, therefore, we can find no justification for the charge of fraud in failing to state these facts when he came to the individual transaction as to the Whiteside property, and the mere fact that some of the corporate funds may have constituted a part of the first payment on the property does not justify the court in setting aside the deliberate agreements of the parties. It would appear from these facts that Cooper's interest is in bringing Schwab to account for such funds of the corporation, but not to convert the Whiteside transaction into a corporate affair with a corresponding division of the profits.

Defendants' exception No. 24 to the register's report was therefore well taken, and should have been sustained.

Defendants' fourth exception to the report concerned a charge against Schwab of $2,362.50, designated as "Patterson and Edy Lumber Company interest accrued to date of closing deal with Anders Brothers," and it is strenuously insisted this exception was well taken. While the solution of this question is not free from difficulty, yet we are persuaded that the testimony of L. P. Anders, a witness without interest in this litigation, justifies and sustains the ruling of the register, and this exception was properly overruled.

What has been said suffices for an expression of our view that complainant Cooper's third exception to the report is not well taken, and we are also of the opinion the court properly allowed Schwab credit for $1,009, expense for T. E. Brent, and complainant's first exception was properly overruled.

The cross-assignments of error are therefore not well taken.

For the error indicated as to defendants' exception 24, the decree will be reversed. The cause will be remanded for a restatement of the account with correction as to this item, but in other respects confirmed. A sale of the land of the corporation has been ordered. If sufficient funds are realized from the sale, it would appear appropriate that the costs of this litigation be first deducted therefrom. If not sufficient, we think the costs should be taxed equally against Schwab and Cooper. Let Cooper, the appellee, be taxed with the costs of this appeal.

Reversed and remanded on main appeal.

Affirmed on cross-appeal.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.