### Kara E. SHIRLEY

v.

### UNITED STATES of America.

No. 4–92–CV–485.

United States District Court,
D. Minnesota,
Fourth Division.

Oct. 13, 1993.

Gerald T. Laurie, Jacqueline A. Mrachek, Lapp Laurie Libra Abramson & Thomson, Minneapolis, MN, for plaintiff.

Friedrich Anson, Paul Siekert, U.S. Atty. Office, Minneapolis, MN, for defendant.

## ORDER

ROSENBAUM, District Judge.

The plaintiff, Kara E. Shirley, filed this action on May 19, 1992, pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346 and 2671, *et seq.* The plaintiff claims that she was sexually abused by an Army recruiter, First Class Sergeant Kevin Reilly, between November, 1985, and September, 1987. Her complaint alleges negligence, assault, battery, intentional and negligent infliction of emotional distress, invasion of privacy, and negligent hiring, retention, and supervision.

The government moves to dismiss for lack of subject matter jurisdiction, for judgment on the pleadings, or for summary judgment, pursuant to rules 12(b)(1), 12(c), 12(h), and 56 of the Federal Rules of Civil Procedure (Fed. R.Civ.P.). The government raises several defenses.[1] Of these, the Court addresses only the government's assertion that Ms. Shirley failed to file her administrative claim within the FTCA's two-year statute of limitations, 28 U.S.C. § 2401.

The question presented is whether Ms. Shirley knew, or reasonably should have known, of her injury and the cause of such injury prior to January, 1990, two years before the filing of her FTCA administrative claim.

The Court heard oral argument on July 23, 1993. Based on the briefs and argument of counsel, the Court determined that it required additional evidence on the question of the plaintiff's notice of the occurrence of the claimed wrong and the date of commencement of the limitations period. *See* Fed. R.Civ.P. 56(f). On September 23, 1993, the Court took testimony from the plaintiff and her therapist in this regard.

## I. *Background*

### A. *The Encounters with Reilly (1985– 1987)* [2]

Kara Shirley, a Minnesota resident, was born on August 14, 1968. She was a student at Lakeville High School from September, 1983, through May, 1986. Ms. Shirley was recruited by the United States Army from November, 1985, through September, 1987. Her recruiter was First Class Sergeant Kevin Reilly.

In November, 1985, Sgt. Reilly drove Ms. Shirley to the Minneapolis Armory where she was to take the Army entrance exam. She was 17 years old. This was the second or third time the plaintiff had met Reilly. When Ms. Shirley got into the car, Reilly commented that she "looked nice," and that she "smelled good." Upon their arrival at the Armory, Reilly parked the car and kissed plaintiff on the lips. This contact surprised the plaintiff, left her feeling "weird" and confused, and made it difficult for her to concentrate on her exam. After the exam, Reilly took her to his home, ostensibly to get a credit card to refuel the government vehicle he was driving. At his home, Reilly asked Ms. Shirley if she noticed that he had an erection. He then placed her hand on his genitals outside of his clothing. He required her to lie down on the couch, and began to kiss and fondle her. Plaintiff testified that she resisted his advances and did not consent to the encounter. Ms. Shirley states that Reilly advised her that this contact was a normal part of the recruiting process. He told her not to tell anyone, and said that he would help her get a good position in the Army. Plaintiff testified that the incident

---

**1.** The government asserts that this Court lacks subject matter jurisdiction over plaintiff's claims, since the alleged conduct did not occur within the scope of Reilly's employment as required by 28 U.S.C. § 1346(b). The government also argues that the complaint is based on assault and battery, which are specifically excepted from the FTCA. The Court need not reach these argu-

ments based upon its resolution of the issue of the statute of limitations, as set forth, *infra.*

**2.** For the purposes of this motion, the historic facts of the contacts between the plaintiff and Sgt. Reilly are not in dispute.

made her feel frightened, confused, and sick to her stomach.

In December, 1985, while driving Ms. Shirley home from an Army recruiting station, Reilly forced Ms. Shirley to perform oral sex on him. Over the next seven months, through June, 1986, Reilly required the plaintiff to perform sexual acts on approximately ten occasions. He continued to tell her that performing such acts was the way to get into the military, and that if she continued to participate, he would insure that she got a favorable position in the Army. Plaintiff testified that each of these encounters left her frightened and sick to her stomach.

In June, 1986, Sgt. Reilly forced Ms. Shirley to perform and receive oral sex. On this occasion he also forced sexual intercourse with her. Ms. Shirley had never experienced this before. She testified that she was sick to her stomach, and experienced physical pain from penetration. She also testified that when she got home from Reilly's house that evening, she induced vomiting. Between June, 1986, and September, 1987, Reilly required Ms. Shirley to perform oral sex on him 10 to 15 more times, and forced intercourse on at least two more occasions.[3] On at least one such occasion, she vomited following the encounter.

The last time Reilly forced Ms. Shirley to have sexual intercourse was at his home in May, 1987. According to Ms. Shirley, Reilly was intoxicated and very violent. She testified that Reilly hurt her during intercourse, and that the pain was such that she yelled at him. Ms. Shirley testified that she ran from Reilly's house that night, for fear of her physical well-being. Other than a subsequent unpleasant encounter at a bar/restaurant, no further contact between Reilly and the plaintiff occurred after September, 1987. Plaintiff never joined the Army.

B. *Plaintiff's subsequent experiences (1990–present)*

Plaintiff alleges that she began to experience significant emotional difficulties in the latter part of 1990. She testified that in June or July, 1990, she experienced the first of several flashback incidents involving Reilly. She related that in Fall, 1990, she experienced problems of low self-esteem and thoughts of death or suicide. At the end of 1990 or early 1991, she developed difficulty in concentrating, and began having trouble in school and in interpersonal relationships. In January, 1991, she experienced sleeplessness and high levels of anxiety. She also testified to frequent headaches, dizzy spells, poor appetite, nightmares, ulcers, and major outbursts of anger. Ms. Shirley testified that none of these symptoms occurred immediately following her contacts with Reilly. In February, 1991, as a result of these difficulties, Ms. Shirley spoke with a social worker, who told her that her problems required the services of a psychologist.

After speaking with the social worker, plaintiff told her parents about Reilly's conduct. This was the first time these experiences were communicated to her family. Soon thereafter, Ms. Shirley consulted counsel who referred her to Dr. Faricy, a psychologist. Ms. Shirley met with Dr. Faricy on March 15, 1991. It is Ms. Shirley's contention that, as a result of therapy, between March and December, 1991, she "pieced together" the events regarding Reilly. According to plaintiff, it was in August, 1991, that she made the connection between those events and her emotional difficulties. In August, 1991, Dr. Faricy diagnosed Ms. Shirley as experiencing post-traumatic stress disorder (PTSD).

On January 24, 1992, plaintiff filed her claim with the Department of the Army, United States Army Claims. She also filed an administrative claim, dated February 12, 1992, on or about February 28, 1992, with the Area Claims Authority, Office of the Staff Judge Advocate. While the United States asserts that Ms. Shirley's claims were made beyond the FTCA period of limitations, there is no claim that the claims were filed improperly. The Army denied plaintiff's claim, and this action ensued.

II. *Analysis*

■ The FTCA provides that, "A tort claim against the United States shall be for-

---

**3.** Plaintiff reached the age of majority on August 14, 1986.

ever barred unless it is presented in writing to the appropriate federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b). The FTCA is a waiver of the United States' sovereign immunity, and the limitations period is a condition of such waiver. *U.S. v. Kubrick,* 444 U.S. 111, 117, 100 S.Ct. 352, 357, 62 L.Ed.2d 259 (1979) (internal citations omitted). Any waiver of sovereign immunity is rigorously construed. *See e.g., United States v. Idaho, ex rel. Dir. Dept. of Water Res.,* — U.S. —, —, 113 S.Ct. 1893, 1896, 123 L.Ed.2d 563 (1993); *Irwin v. Veteran's Affairs,* 498 U.S. 89, 93, 111 S.Ct. 453, 456, 112 L.Ed.2d 435 (1991). The limitations provision "is the balance struck by Congress in the context of tort claims against the Government; and [the Court is] not free to construe it so as to defeat its obvious purpose, which is to encourage the prompt presentation of claims." *Kubrick,* 444 U.S. at 117, 100 S.Ct. at 357 (citing *Campbell v. Haverhill,* 155 U.S. 610, 617, 15 S.Ct. 217, 220, 39 L.Ed. 280 (1895); *Bell v. Morrison,* 1 Pet. 351, 360, 7 L.Ed. 174 (1828)). The Court is to regard a defense of limitations as a "meritorious defense, in itself serving the public interest." *Id.* (quoting *Guaranty Trust Co. v. United States,* 304 U.S. 126, 136, 58 S.Ct. 785, 790, 82 L.Ed. 1224 (1938).

■■ The date on which a claim accrues is a question of federal law. *Wehrman v. U.S.,* 830 F.2d 1480, 1482–83 (8th Cir.1987). A cause of action accrues under the statute when the plaintiff "actually knew, or in the exercise of reasonable diligence should have known, the cause and existence of [her] injury." *Id.* at 1483.[4] If the cause and the fact of the injury is known, a lack of knowledge of the injury's permanence, extent, and ramifications does not toll the statute of limitations. *See e.g., Manko v. U.S.,* 830 F.2d 831, 842 (8th Cir.1987); *Gustavson v. U.S.,* 655 F.2d 1034, 1036 (10th Cir.1981). The Supreme Court made clear:

> That [a plaintiff] has been injured in fact may be unknown or unknowable until the injury manifests itself; and the facts about causation may be in the control of the putative defendant, unavailable to the

plaintiff or at least very difficult to obtain. The prospect is not so bleak for a plaintiff in possession of the critical facts that [s]he has been hurt and who has inflicted the injury. [S]he is no longer at the mercy of the latter. There are others who can tell [her] if [s]he has been wronged and [s]he need only ask.

*See Kubrick,* 444 U.S. at 122, 100 S.Ct. at 359.

■ Ms. Shirley does not argue that she was unaware of the sexual contacts with Sgt. Reilly, nor does she claim that she did not know of her emotional difficulties; rather, she contends that she did not know of the cause-effect relationship of those experiences. The plaintiff directly states that during the course of her encounters with Reilly, she was, by turns, confused, sick, nauseated, humiliated, in pain, and in fear of her physical well-being. The plaintiff stated that for years after these contacts, she struggled with self-doubt, diminished self-esteem, inability to communicate, and difficulty in interpersonal relationships. But according to plaintiff, it was not until her counseling sessions with Dr. Faricy that she discovered that she was injured by Reilly's conduct, and specifically, that it resulted in PTSD.

The government responds that Ms. Shirley's claims accrued by September, 1987, more than four years prior to her administrative claim. It is the government's position that Ms. Shirley was aware of a physical invasion when the sexual abuse occurred, since, by her own testimony, she was sickened and frightened. Moreover, the government contends that since Reilly was the only person Ms. Shirley implicated, she knew the "cause" of her injury.

The Court finds that this action must be dismissed for failure to comply with the FTCA's two-year statute of limitations. Reduced to its essence, the plaintiff's theory is that Reilly's sexual assaults triggered a later malady—post-traumatic stress disorder—the onset of which was manifest and recognized more than two years after the encounter. In her view, the onset and diagnosis of PTSD

---

4. A plaintiff's minority status does not toll the FTCA's statute of limitations. *Smith v. U.S.,* 588 F.2d 1209, 1211 (8th Cir.1978) (citations omitted).

would revivify an otherwise stale claim and commence the two-year limitations period. The plaintiff argues that her limitations period commenced either with the onset of the first PTSD symptoms in July, 1990 (flashback, relationship disfunction), or upon her PTSD diagnosis in August, 1991. Each of these events occurred within two years of her filing of the FTCA notice.

Plaintiff argues that *Simmons v. United States,* 805 F.2d 1363 (9th Cir.1986) is controlling. In *Simmons,* the plaintiff had a sexual relationship with her government-provided psychiatric worker/counselor. In that case, the Ninth Circuit affirmed the district court's finding that the plaintiff's claim did not accrue until a new psychiatrist rendered a diagnosis that her psychological damage was caused by the former counselor's contacts. In Simmons' case, those contacts constituted an abuse of the transference phenomenon.[5]

The plaintiff's reliance on *Simmons* is misplaced. In *Simmons,* the sexual assault was committed by a psychological health care professional who utilized transference—the very essence of the psychoanalytic method—as a means to commit his wrongful act. The *Simmons* court described the transference phenomenon and its ability to blur and confuse the therapist-patient relationship. The Ninth Circuit noted, "Where the injury and cause thereof are subtler and more complicated *than in the normal malpractice case,* it seems particularly inappropriate to determine as a matter of law what the plaintiff should have known." *Simmons,* 805 F.2d at 1368 (emphasis added).

Thus, in *Simmons,* the victim knew of the acts, but as a function of the "therapeutic" procedures, she could not have known she was the victim of a wrong. There was no indication of the use of physical force or coercion. In the present case, on the other hand, Ms. Shirley actually knew Reilly's acts did not feel right to her. She clearly knew that Reilly's untoward acts had occurred, and she perceived their physical manifestations. She felt their effects during and immediately following the events. She was hurt, confused, and physically sickened. That the plaintiff may have been lulled into taking no action is not equivalent in law or in fact with the transference phenomenon seen in *Simmons.* The Court cannot recognize an exception to the Congressionally mandated two-year period of limitations simply because the diagnosed condition is PTSD. The recognition of a PTSD exception for a Federal Tort Claims action would eviscerate the concept of *any meaningful limitations period.* PTSD, by definition, is manifest at a time distant from the triggering event. The onset of the malady can be delayed for months or years. *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM–III–R) 247–51 (3rd ed. 1987) (revised). It is not for the courts, but for the legislature, to decide that, in the case of a particular psychological condition, the limitations period may be extended for years.

The Court finds, as a matter of law, that the plaintiff's 1987 cognition of her contacts with Sgt. Reilly and her contemporaneous recognition of their immediate effects on her, triggered the beginning of the limitations period. Plaintiff's argument also suggests that although she felt confused, physically sickened, and frightened at the time of her contacts with Reilly, he convinced her that his acts were appropriate. She testified repeatedly that she believed what he told her because he was "her recruiter" and "in a position of authority." She argues that it was not until therapy that she realized that Reilly's acts were wrong. The Court rejects this position.

It would be a mistake to leap from the specific dynamic of a psychologist-patient relationship, vis-a-vis *Simmons,* and generalize from it to any relationship in which there is an imbalance of power or authority. To adopt the plaintiff's position would enunciate a rule that when a sentient person is wronged by an authority figure (or one perceived to be such a figure), and is told the wrong is, in fact, permitted, a tort action

---

5. *Simmons,* 805 F.2d at 1364–66, provides a detailed explanation of the transference phenomenon, which this Court need not recount.

against the sovereign may be delayed until the possible development of a later psychic manifestation. The Court declines to adopt this rule.

Accordingly, for the reasons set forth herein, and based on the files, records, and proceedings herein, defendant's motion to dismiss is granted.

IT IS SO ORDERED.