[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 164 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 165 
East Alabama Behavioral Medicine, P.C. ("East Alabama"), appeals from an order denying its postjudgment motion for a judgment as a matter of law ("JML"), or, alternatively, for a new trial or a remittitur. We reverse and render a judgment for East Alabama.
In August 1996, Phillip Chancey sought treatment from East Alabama for depression, anxiety, and panic attacks. Dr. Kimberly Whitchard was Phillip's treating psychologist. On December 23, 1996, Whitchard and Phillip met for drinks at a local restaurant following a therapy session. While at the restaurant, the two expressed romantic feelings for each other. According to East Alabama, Whitchard informed Phillip that same night that if she and Phillip engaged in a personal relationship she would need to terminate their psychologist-patient relationship. The Chanceys assert that the psychologist-patient relationship between Phillip and Whitchard did not end until December 26, 1996. Nonetheless, Phillip never objected to the termination of the professional relationship, and it is undisputed that that relationship ended no later than December 26, 1996.
On December 28, 1996, Phillip sent messages to the pager Whitchard used in conjunction with her work at East Alabama, expressing his love for her. Somehow, the messages were faxed to East Alabama on December 30. Upon receiving these messages, the administrators of East Alabama, Ed Sweeney and Joe Beacham, learned about Phillip's infatuation with Whitchard and confronted Whitchard about the matter. Sweeney and Beacham instructed Whitchard to end all contact, both personal and professional, with Phillip. Furthermore, Sweeney and Beacham prepared a letter for Whitchard to send to Phillip informing him that Whitchard would no longer be his psychologist and that, if he wished to continue treatment at East Alabama, Phillip's case would be assigned to Eddie Lancaster. Phillip declined further treatment and never returned to East Alabama. Whitchard testified at trial that Sweeney and Beacham told her during her meeting with them on December 30, 1996, to change Phillip's medical records to make it appear as though he had expressed feelings for her during a treatment session and that she had then discussed the limits of a therapeutic relationship with him. Sweeney and Beacham conceded that Phillip's medical records had been altered, but denied that they instructed Whitchard to do so.
By mid-January 1997, approximately three weeks after the termination of their professional relationship, Phillip and Whitchard were sexually involved. A friend of Beth Chancey, Phillip's wife, saw Whitchard and Phillip together, and she told Beth. Beth then asked Phillip to leave the marital home. At that time, Whitchard, who was also married, told her husband that she was leaving him for Phillip. On January 18, 1997, Whitchard met with Beacham and Sweeney at Beacham's home to tell them that she and Phillip were still involved in a personal relationship and that she was resigning from her position at East Alabama. Shortly after Whitchard's *Page 166 
resignation, Phillip ended the affair and sought treatment from another physician. In March 1997, after the affair had ended, Whitchard returned to East Alabama and requested that she be rehired. Sweeney and Beacham agreed to rehire Whitchard under the condition that she undergo a psychiatric evaluation and, if necessary, psychiatric treatment. Also, if she was rehired, Whitchard would be restricted to treating only female patients.
Phillip and Beth Chancey sued Whitchard and East Alabama alleging negligent or wanton hiring, training, and supervision; negligent or wanton counseling; negligent or wanton "abandonment"; and negligence or wantonness per se; Beth Chancey alleged loss of consortium. The first amended complaint reasserted the original causes of action. East Alabama filed a motion for a summary judgment. The Chanceys, in response to East Alabama's motion for a summary judgment, conceded that the entire basis for East Alabama's liability was the doctrine of respondeat superior and the agency relationship that existed between Whitchard and East Alabama. The trial court granted East Alabama's motion for a summary judgment as to the claims asserting negligent hiring and supervision. The Chanceys then filed a second amended complaint alleging the alteration or destruction of medical records.
The Chanceys entered into a pro tanto settlement with Whitchard, settling all their claims against her for $5,000. The case against East Alabama on the remaining claims against it proceeded to a jury trial. At the close of the Chanceys' case, East Alabama moved for a preverdict JML, which the trial court denied. The jury returned a verdict in favor of the Chanceys awarding them $1 each in compensatory damages and a total of $495,000 in punitive damages. East Alabama then filed a postjudgment motion for a JML, or, alternatively, for a new trial, or a remittitur, primarily asserting that the issues of vicarious liability, ratification, and abandonment should not have been submitted to the jury because, as a matter of law, East Alabama cannot be held liable for Whitchard's tortious conduct. The trial court denied the motion. East Alabama contends that the trial court erred in refusing to grant its motions for a JML. We agree.
 I. Vicarious Liability Under the Doctrine of Respondeat Superior
The law in Alabama is well settled that an employer is not liable for the intentional acts of its employee unless the acts were committed within the scope of the employee's employment or were done to further the interests of the employer. Joyner v.AAA Cooper Transp., 477 So.2d 364, 365 (Ala. 1985). East Alabama argues that the trial court should not have submitted the issue of vicarious liability to the jury because, as a matter of law, Whitchard's actions were beyond her scope of employment. Further, East Alabama argues that under Alabama law, sexual misconduct by an employee is never vicariously attributable to the employer. The Chanceys contend that East Alabama is liable under the theory of respondeat superior because, they say, Whitchard failed to inform Phillip about "transference phenomenon" when he first expressed romantic feelings for Whitchard. During her trial testimony, Whitchard defined "transference" as "a social construct that describes when a patient has feelings based on past, family, social, etc., etc., experiences that they project on a therapist." The Chanceys argue that the duty to inform Phillip of the existence of such a phenomenon was within the scope of Whitchard's employment. *Page 167 
In Solmica of Gulf Coast, Inc. v. Braggs, 285 Ala. 396,232 So.2d 638 (1970), this Court articulated the test by which to determine whether an employer should by held liable for the actions of an employee:
 "`The test is the service in which the employee is engaged. The rule which has been approved for determining whether certain conduct of an employee is within the line and scope of his employment is substantially that if an employee is engaged to perform a certain service, whatever he does to that end, or in furtherance of the employment, is deemed by law to be an act done within the scope of the employment. . . .'
 "The conduct of the employee, to come within the rule, must not be impelled by motives that are wholly personal, or to gratify his own feelings or resentment, but should be in promotion of the business of his employment."
285 Ala. at 401, 232 So.2d at 642-43 (citations omitted).
This Court discussed this test and how it relates to an employee's sexual misconduct in Doe v. Swift, 570 So.2d 1209
(Ala. 1990). The plaintiff in Swift had been sexually assaulted by a psychologist employed by a State-run hospital. Subsequently, the plaintiff won a judgment against the psychologist in a federal court. The State refused to pay the judgment out of the State Employees' Liability Trust Fund because it believed that the psychologist's actions were outside of the scope of his employment. The plaintiff filed an action in state court, seeking to compel the payment of the judgment from the Fund. The trial court entered a summary judgment for the defendants, and the plaintiff appealed. This Court affirmed the summary judgment, holding that the sexual misconduct was wholly outside of the scope of the employment because it was not done in furtherance of the employer's business, but rather it was done for the psychologist's personal gratification.[1] Swift, 570 So.2d at 1213.
The instant case is similar to Swift. Whitchard's affair with Phillip was not a function of her employment at East Alabama. Furthermore, East Alabama had nothing to gain from the affair. It is undisputed that East Alabama instructed Whitchard to end her relationship with Phillip immediately upon Sweeney and Beacham's accidental discovery of Phillip's infatuation with Whitchard.
The Chanceys presented evidence acknowledging that Whitchard's actions were personal to her and were not condoned by her profession. The Chanceys' expert witness, Dr. Barry Burkhardt, testified that "[Whitchard] didn't take care of [Phillip]. In fact, what she did instead was form a personal relationship with him, and in the context of that personal relationship, gratified [her] needs at the expense of Mr. Chancey's well-being." Whitchard's affair with Phillip was not undertaken to further East Alabama's business of providing psychiatric treatment to its patients; rather, it was done to satisfy Whitchard's personal needs. Under Alabama law, an employer is not liable under the doctrine of respondeat superior when the employee acts for his or her own personal gain and not in furtherance of the employee's business; therefore, East Alabama should not be held liable for the actions of Whitchard. See Swift, 570 So.2d at 1213;Solmica, 285 Ala. at 401, 232 So.2d at 642-43. *Page 168 
Relying upon Simmons v. United States, 805 F.2d 1363 (9th Cir. 1986), the Chanceys assert that East Alabama should be held liable because Whitchard failed to explain the theory of transference to Phillip. In Simmons, the United States Court of Appeals for the Ninth Circuit held that the federal government was liable for the sexual misconduct of a psychiatrist employed by the Indian Health Service, a federal agency. The psychiatrist had been treating the patient for five years when she expressed her feelings of attraction for him. The psychiatrist encouraged her to act upon these feelings, and he failed to inform her about transference phenomenon. Simmons, however, does not govern this case. In Simmons, the Ninth Circuit applied what it considered to be the law of the State of Washington regarding vicarious liability, citing a case involving an automobile collision. However, in Swift, we listed Simmons among cases that stood for the proposition that "`sexual acts can be in the line and scope of one's employment.'" 570 So.2d at 1212. This Court then stated, "We are not persuaded by the holdings in these cases."
A Washington court has subsequently criticized Simmons. SeeThompson v. Everett Clinic, 71 Wash.App. 548, 553,860 P.2d 1054, 1058 (1993). After noting that the court in Simmons had held that an employer could be liable for a sexual relationship conducted in conjunction with other acts within the scope of the employee's duties, the Thompson court rejected that holding and stated:
 "We hold the better view to be that of Kuehn [v. White, 24 Wash.App. 274, 600 P.2d 679 (1979)], which states:
 "`Where the servant's intentionally tortious or criminal acts are not performed in furtherance of the master's business, the master will not be held liable as a matter of law even though the employment situation provided the opportunity for the servant's wrongful acts or the means for carrying them out.'
 "(Emphasis added [in Thompson].) Kuehn, 24 Wash.App. at 278, 600 P.2d 679. This rule sets forth that a tort committed by an agent, even if committed while engaged in the employment of the principal, is not attributable to the principal if it emanated from a wholly personal motive of the agent and was done to gratify solely personal objectives or desires of the agent."
71 Wash.App. at 553, 860 P.2d at 1058. Several other federal and state courts, in addition to the Washington court, have distinguished or declined to follow the holding in Simmons. SeeK.E.S. v. United States, 38 F.3d 1027 (8th Cir. 1994);Mansfield v. Watson, 990 F.2d 1258 (9th Cir. 1993); Reed v.Barnes, 986 F.2d 1428 (10th Cir. 1993); Lopez v. UnitedStates, 998 F.Supp. 1239 (D.N.M. 1998); Benavidez v. UnitedStates, 998 F.Supp. 1225 (D.N.M. 1997); Shirley v. UnitedStates, 832 F.Supp. 1324 (D.Minn. 1993); Schmidt v. Bishop,779 F.Supp. 321 (S.D.N.Y. 1991); Wood v. United States,760 F.Supp. 952 (D.Mass. 1991); John R. v. Oakland Unified Sch.Dist., 48 Cal.3d 438, 256 Cal.Rptr. 766, 769 P.2d 948 (1989);Doe v. Madison Ctr. Hosp., 652 N.E.2d 101 (Ind.App. 1995);P.W.P. v. L.S., 266 Kan. 417, 969 P.2d 896 (1998); Gray v.Johnson Johnson Med., 14 Mass. L. Rptr. 9 (2001) (not reported in N.E.2d); Bratton v. Calkins, 73 Wash. App. 492, 870 P.2d 981
(1994); Washington Ins. Guar. Ass'n v. Hicks, 49 Wash.App. 623,744 P.2d 625 (1987).
Alabama has also carved out an exception to vicarious liability that precludes recovery from an employer when the employee acts on wholly personal motives that would not "reasonably further" the employer's business. Prosser v. Glass, *Page 169 481 So.2d 365, 368 (Ala. 1985). Alabama courts, as well as other courts, have held that sexual misconduct is personal to the employee and is outside of the scope of employment. See Andrewsv. United States, 732 F.2d 366 (4th Cir. 1984) (holding that the seduction of a patient by a physician's assistant was outside of the scope of the assistant's employment); Joyner, 477 So.2d 364
(holding that a manager's attempt to force other employees to perform sexual acts was not in furtherance of the company's business); Great Atl. Pac. Tea Co. v. Lantrip,26 Ala.App. 79, 153 So. 296 (1934) (holding that a store clerk's sexual advances toward a customer were entirely personal).
Particularly instructive on the absence of a basis for vicarious liability on the part of East Alabama is Perkins v.Dean, 570 So.2d 1217 (Ala. 1990). In Perkins, Roberta Perkins and her husband sought individual and family counseling from Northwest Alabama Regional Mental Health Center ("Northwest"), and Almus Larry Dean was assigned to counsel them. During one of the sessions, Perkins told Dean that she wanted to have an affair with him. Dean explained transference phenomenon to her, but he told her to "check back with me [Dean] later and we'll see how it is between my wife and [me] and you and your husband." 570 So.2d at 1218. Dean later resigned from Northwest, but he continued to have contact with the Perkinses. Three months after Dean's resignation, he and Perkins began a sexual affair. After the affair ended, the Perkinses filed a malpractice action against Dean and Northwest. This Court held that because the sexual relationship occurred after the professional relationship between Dean and Perkins had ended, there was no basis on which to sustain a malpractice claim against Northwest. See Perkins, 570 So.2d at 1219 ("When Dean had sex with Roberta Perkins, he was not employed by or associated with Northwest in such a way that a master/servant relationship existed (Perfection Mattress Spring Co. v. Windham, 236 Ala. 239, 182 So. 6 (1938), as cited in Scott v. Great Atlantic Pacific Tea Co., 338 F.2d 661, 662 (5th Cir. 1964) (applying Alabama law)), nor did the intercourse take place within the line or scope of Dean's employment with Northwest."). Because the affair between Dean and Perkins was deemed purely social and not within Dean's scope of employment with Northwest, Northwest could not be held vicariously liable for any actions taken by Dean in engaging in the sexual relationship. Likewise, the Chanceys' allegations concerning sexual activity occurring after the professional relationship between Whitchard and Phillip had ended cannot serve as the basis for vicarious liability on the part of East Alabama, because those actions did not occur within the scope of Whitchard's employment with East Alabama.
We therefore reject the Chanceys' contention that Whitchard's failure to inform Phillip about transference phenomenon fell within the scope of Whitchard's employment.[2]
 II. Vicarious Liability Under the Doctrine of Ratification
In addition to vicarious liability under the doctrine of respondeat superior, an employer can also be held liable for the unlawful acts of its employee if the employer ratifies those acts. Potts v. BE K Constr. Co., 604 So.2d 398, 400 (Ala. 1992). An employer ratifies an act when *Page 170 
1) it expressly adopts the employee's behavior or 2) it implicitly approves the behavior. Potts, 604 So.2d at 400. Furthermore, "[a]n employer's failure to stop the tortious conduct after it learns of the conduct will support an inference that the employer tolerated the conduct." Id. Acquiescence or ratification requires full knowledge or means of knowledge of all material facts. American Nat'l Bank Trust Co. v. Powell,235 Ala. 236, 245, 178 So. 21, 29 (1937); Van Heuvel v. Roberts,221 Ala. 83, 87, 127 So. 506, 509 (1930). An employer cannot be said to have ratified an employee's conduct when the employer, upon learning of an employee's conduct, which was not in the scope of the employee's employment, gives instructions calculated to prevent a recurrence. Joyner, 477 So.2d at 365 (after an employee's homosexual advances to another employee were reported to the employer, the employer conducted an investigation and informed the offending employee that if another complaint of this nature came to the employee's attention the offending employee would be laid off and a full-scale investigation conducted).
The Chanceys argue that East Alabama ratified Whitchard's conduct by ordering that Phillip's medical records be altered, failing to terminate Whitchard's employment, and instructing Whitchard to refer Phillip to Lancaster, who they say is an unqualified counselor. The Chanceys offer this theory of ratification without citation to authority. These activities all occurred before East Alabama became fully knowledgeable as to Whitchard's conduct. Indeed, East Alabama was ignorant of the all of the facts because the events made the basis of this action, occurring in January 1997, had not yet taken place.
While the falsification of medical records is inexcusable, it cannot serve as evidence that East Alabama ratified Whitchard'ssubsequent conduct, which was taken contrary to the instructions given Whitchard by East Alabama. When East Alabama allegedly instructed Whitchard to change Phillip's records, all Sweeney and Beacham knew was that Phillip and Whitchard had met for drinks and that Whitchard had terminated or was in the process of terminating the psychologist-patient relationship between her and Phillip. It is undisputed that when Sweeney and Beacham learned of Whitchard's social relationship with Phillip, they instructed her to end both the professional relationship and the social relationship. East Alabama had no knowledge at the time the records were falsified that Whitchard and Phillip would thereafter have sexual relations, that Phillip's wife would thereafter ask him to leave their home, and that Whitchard would leave her husband as a result of her affair with Phillip. Ratification requires full knowledge of the facts. AmericanNat'l, 235 Ala. at 245, 178 So. at 29; Van Heuvel,221 Ala. at 87, 127 So. at 509. The Chanceys offered no evidence indicating that East Alabama failed to stop the subsequent tortious conduct of Whitchard after it learned of the infatuation. To the contrary, Sweeney and Beacham instructed Whitchard to end the relationship. Likewise, no ratification was shown in Joyner
when the employer warned the employee against repeating the conduct made the basis of the action. 477 So.2d at 365. InJoyner, the record reflected that no subsequent misdeed occurred, while here, the subsequent misdeeds were contrary to East Alabama's express instructions. We do not address the question whether the falsification served as ratification of only those acts that occurred before December 30, 1996, because the complaint is not so narrowly framed.
The Chanceys claim that Whitchard should have been fired, on December *Page 171 
30 before she resigned, when Sweeney and Beacham received the faxed messages from Phillip expressing his love for Whitchard and that the failure to fire her at that time constitutes ratification. The Chanceys contend that East Alabama has a "zero tolerance" rule that requires termination of a therapist's employment if the therapist forms a personal relationship with his or her patient. According to the Chanceys, however, Phillip was no longer Whitchard's patient as of December 26, 1996. Therefore, even if we assume that the zero tolerance policy required Whitchard's termination, notwithstanding assurances from her that the therapist-patient relationship had been ended, the same problem as to East Alabama's lack of full knowledge of events that had not yet occurred prevents its failure to terminate Whitchard on December 30, 1996, from serving as evidence of ratification. Moreover, insistence in this case on immediate termination to prevent evidence of ratification conflicts with this Court's holding in Joyner. Again, we do not address the question whether the failure to terminate on December 30, 1996, served as ratification of only those acts that occurred before December 30, 1996, because the complaint is not so narrowly framed.
The Chanceys also argue that East Alabama's later rehiring of Whitchard ratified Whitchard's conduct. Whitchard was rehired months after her relationship with Phillip had ended, and stringent conditions were imposed on her continued employment with East Alabama. Whitchard had to undergo a psychiatric evaluation and psychiatric treatment, if necessary, to ensure that she was fit to practice psychology again. East Alabama also limited Whitchard's practice to the treatment of females only. While this action took place after East Alabama had full knowledge of Whitchard's conduct, the stringent limitations placed on Whitchard's rehire do not constitute substantial evidence of ratification of her previous conduct.
The doctrine of ratification cannot form the basis for liability on the part of East Alabama.
 III. Bases for Direct Liability of East Alabama
The Chanceys argue that East Alabama is directly liable because East Alabama revised Phillip's medical records to make it appear that he was at fault in engaging in the relationship with Whitchard, referred him to an unqualified and incompetent therapist, and allowed Whitchard to make the referral. The only authority the Chanceys cite for the proposition that where a principal participates in the tort to such extent that he may be considered a joint tortfeasor, liability, whether grounded in negligence or willful conduct, is joint and several is CourtesyFord Sales, Inc. v. Clark, 425 So.2d 1075 (Ala. 1983).
Before reaching the merits of this argument, we point out that in response to East Alabama's motion for a summary judgment filed before the filing of the second amended complaint, the Chanceys conceded that the entire basis for East Alabama's liability was the doctrine of respondeat superior and the existence of an agency relationship between Whitchard and East Alabama. The Chanceys contend that the subsequently filed second amended complaint contained a count charging abandonment. However, that count was set forth in the complaint that was before the trial court when the Chanceys made their concession. Further, the case was not tried on the basis of direct liability on the part of East Alabama because the jury was instructed that East Alabama could not be liable to the Chanceys if they found that Whitchard was not acting within the line and scope of her *Page 172 
employment. Nevertheless, we address the merits of the Chanceys' claim that East Alabama was directly liable.
Returning to Courtesy Ford, we note that the authority for the proposition as to the liability of a joint tortfeasor for the conduct of other tortfeasors traces back to Liberty NationalLife Insurance Co. v. Weldon, 267 Ala. 171, 100 So.2d 696
(1958). In Liberty National, this Court also recognized a rule of causation applicable to cases involving multiple tortfeasors, stating:
 "The many decisions of this court dealing with negligence as the proximate cause, when some agency has intervened and has been the immediate cause of the injury, hold the party guilty of negligence in the first instance is not responsible, unless at the time of the original negligence the act of the agency could have been reasonably foreseen. If the act of the intervening agency could have been reasonably foreseen the causal chain is not broken. But if the injury results from an independent, intervening, efficient cause, not reasonably to be anticipated, to wit, the act of a third person, the negligence shown, if any, is not the proximate cause of the injury."
267 Ala. at 187, 100 So.2d at 711 (emphasis added). Assuming that abandonment of treatment would serve as a sufficient basis for tortious conduct on East Alabama's part, we would have to conclude that the subsequent sequence of events, including Whitchard's disregard of East Alabama's express instructions, an event that East Alabama should not reasonably have anticipated, constitutes, as a matter of law, an intervening efficient cause. At most, East Alabama was a civil conspirator that withdrew before commission of the misconduct made the basis of this action and therefore cannot be held responsible for the wrongful acts of its former co-conspirator. See National Park Bank of New York v.Louisville N.R.R., 199 Ala. 192, 198, 74 So. 69, 72 (1917).
The Chanceys' contention that abandonment affords a basis for the direct liability of East Alabama is flawed for another reason also related to causation. At trial, the Chanceys presented evidence from an expert witness, who testified that the failure to refer a patient in need of treatment to a competent professional constitutes an abandonment of the patient. This theory was not disputed by East Alabama. However, East Alabama argued that the abandonment theory is inapplicable in this instance because Phillip, who had no knowledge of Lancaster's credentials or lack thereof, simply declined further treatment from East Alabama.
To recover damages in a medical-malpractice action, the plaintiff must establish the traditional elements of negligence. The plaintiff must present expert evidence regarding the physician's standard of care and the physician's breach of that standard. Rivard v. University of Alabama Health Servs. Found.,P.C., 835 So.2d 987, 988 (Ala. 2002). Furthermore, the plaintiff must show a causal connection between an injury suffered and the physician's actions. McAfee v. Baptist Med. Ctr.,641 So.2d 265, 269 (Ala. 1994). The Chanceys failed to prove how East Alabama's alleged abandonment caused them any injury. In fact, Beth testified that Phillip had no intention of returning to East Alabama for treatment. Moreover, Phillip was under the care and treatment of another physician within three weeks of December 30, 1996. Phillip's rejection of further treatment by East Alabama precludes a showing of a causal connection between the argued faulty referral and any injury suffered by the Chanceys.
Therefore, assuming the Chanceys' claim for direct liability against East Alabama *Page 173 
is properly before us, we conclude that it fails as a matter of law.
 IV. Conclusion
The Chanceys failed to prove that Whitchard was acting within the line and scope of her employment when she engaged in a sexual relationship with Phillip Chancey, failed to prove that East Alabama ratified Whitchard's conduct made the basis of this action, and either did not assert in the trial court a claim of direct liability of East Alabama or, if they did assert such a claim, failed to prove such a claim as a matter of law. The trial court erred in denying East Alabama's motion for a JML; therefore, we reverse the trial court's judgment and render a judgment in favor of East Alabama.
REVERSED AND JUDGMENT RENDERED.
HOUSTON, SEE, JOHNSTONE, and WOODALL, JJ., concur.
[1] The plaintiff in Swift also alleged in her complaint that the psychologist's actions were "`wholly personal,' and not done `in furtherance of his employment,' but solely `to gratify his own feelings.'" 570 So.2d at 1212.
[2] While the Chanceys contend that East Alabama is liable based on facts they say the jury could have found to constitute East Alabama's abandonment of Phillip as a patient, this argument is not offered as justification for East Alabama's liability under the doctrine of respondeat superior.