In the

# United States Court of Appeals

## For the Seventh Circuit

No. 21-2922

ESTATE OF ERIC JACK LOGAN,

*Plaintiff-Appellant,*

*v.*

CITY OF SOUTH BEND, INDIANA, and RYAN O'NEILL,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:19-CV-495 DRL-MGG — **Damon R. Leichty**, *Judge.*

ARGUED SEPTEMBER 12, 2022 — DECIDED OCTOBER 3, 2022

Before EASTERBROOK, SCUDDER, and JACKSON-AKIWUMI, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Police officer Ryan O'Neill shot and killed Eric Jack Logan after Logan walked menacingly toward him. During a 3:30 am encounter, while O'Neill was investigating reports that someone was stealing items from parked cars, Logan picked up a hunting knife and approached O'Neill. The officer told Logan to stand still and put down the weapon. Logan did neither, held the knife up, and

came within three steps of O'Neill. Logan threw the knife, hitting O'Neill in the arm, and O'Neill fired his gun, hitting Logan in the torso. Only after being shot did Logan obey the command to get on the ground. O'Neill called for an ambulance, but Logan died at a hospital. His estate filed this suit under 42 U.S.C. §1983, accusing O'Neill of violating the Fourth Amendment (applied to state actors by the Fourteenth) by using deadly force when he was not in danger. See *Tennessee v. Garner*, 471 U.S. 1 (1985). The district court granted summary judgment in favor of O'Neill and his employer, the City of South Bend. 564 F. Supp. 3d 719 (N.D. Ind. 2021).

The facts we have recited come from the affidavit and deposition of Officer O'Neill, the only surviving witness to the events. The Estate does not deny that Logan had a hunting knife; ignored commands to drop the knife, stand still, or get down; advanced on O'Neill; and threw the knife at him. But the Estate contends that one of O'Neill's multiple descriptions of these events implies that Logan threw the knife a second or so before O'Neill pulled the trigger. If that is the sequence, the Estate submits, then O'Neill was safe (Logan was no longer armed) and could not use deadly force. Moreover, the Estate contends, a jury might doubt O'Neill's version of events because he did not activate his body camera until he had fired, and he has been convicted of ghost employment, a felony in Indiana. If O'Neill is not credible, the argument goes, then a jury could find that he used unreasonable force.

Litigation must be resolved on the evidence that exists. When an officer who used deadly force is the only possible witness, a decedent's estate is unlikely to succeed unless physical evidence contradicts the officer's account. So we

have said in multiple decisions. See, e.g., *King v. Hendricks*, 954 F.3d 981 (7th Cir. 2020); *Gysan v. Francisko*, 965 F.3d 567 (7th Cir. 2020). The physical evidence, such as the bullet track, is consistent with O'Neill's account.

Disbelief of the only witness is not proof that the opposite of the witness's statements is true; disbelief would mean that the record is empty, and on an empty record the plaintiff loses, because the plaintiff has the burdens of production and persuasion. See, e.g., *Waldon v. Wal-Mart Stores, Inc.*, 943 F.3d 818, 823 (7th Cir. 2019) ("Criticizing the credibility of the movant's affiants, alone, is not enough to avoid summary judgment. '[W]hen challenges to witness' credibility are *all* that a plaintiff relies on, and he has shown no independent facts— no proof—to support his claims, summary judgment in favor of the defendant is proper.' *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (emphasis in original); see also *Dugan v. Smerwick Sewerage Co.*, 142 F.3d 398, 406 (7th Cir. 1998) ('[T]he prospect of challenging a witness' credibility is not alone enough to avoid summary judgment.').") See also *United States v. Zeigler*, 994 F.2d 845 (D.C. Cir. 1993).

O'Neill has described the encounter in multiple, slightly different, ways. The statement most favorable to the Estate boils down to: "He threw a knife at me, so I shot him." The Estate maintains that this admits to a temporal sequence of knife first, shot second. That is not clear to us; it could mean that the two events were simultaneous. But let us take the Estate's perspective. Would that permit a reasonable jury to find that O'Neill shot Logan after O'Neill was out of danger? Not at all. Logan evidently was bent on harming the officer. Why would anyone in O'Neill's position believe that the knife was the only weapon at Logan's disposal? He might have had

concealed weapons—and Logan assuredly had fists, feet, and elbows, all of which could have been used in the moment to inflict damage. Logan was substantially larger than O'Neill. That Logan closed on O'Neill and threw a knife shows that the risk was ongoing during the few seconds that O'Neill had to make decisions. The use of force must end after a suspect has been subdued, *Miller v. Gonzalez*, 761 F.3d 822, 829 (7th Cir. 2014), but Logan was still on his feet and advancing when O'Neill opened fire.

The Estate concedes that O'Neill would be entitled to prevail if he had pulled the trigger while the knife was still in Logan's hand; we think that the use of force remains reasonable after a suspect employs a weapon, has not surrendered, and thus remains dangerous. O'Neill tried to persuade Logan to desist; it would make little sense to read the Constitution as requiring officers to use deadly force as soon as they see a weapon in a suspect's hand, lest they give up their right of self-defense.

The Estate relies on an expert who proposed to testify that police officers are trained that they should continue shooting until the danger has been suppressed. On this view, the fact that O'Neill fired only two shots implies that he thought himself to be safe. Like the district court, we do not see how the premise about training supports the conclusion that O'Neill was secure. O'Neill knew that he had hit Logan with his second shot, which induced Logan to surrender. The idea that police officers must *keep* shooting a suspect in order to establish their right to have fired in the first place is perverse. Such a principle would induce officers to empty their magazines—making sure that the suspect dies—instead of using the least

force necessary to end the hazard. O'Neill left Logan with a chance to live and should not be penalized for doing so.

The fact that many shootings by police eliminate an important source of evidence is troubling, but litigation remains tied to the record. This record compels a decision for O'Neill.

AFFIRMED